## Strickland, Appellant, v. Pennsylvania R. R.

[Marked to be reported.]

*Markets—Definition.*

A market is a place designated by the municipal authorities of a city or an incorporated town for the sale of articles necessary or convenient for the subsistence of men and domestic animals.

*Municipal control of markets—Interest in stall.*

A market, though owned by private parties, and opened by municipal permission, is subject to the police control and to the visitorial power of the municipal government.

The right to sell at a stall or stand in a market is to be exercised by the lessee of the stall or stand subject to all the qualifications and restrictions that the municipality may impose. The lessee has no such exclusive right to the possession of his stall as he might have to a store or a dwelling house rented to him. He has no right to the ground covered by his stall, as ground, and he has no estate in the building, or definite legal standing that will enable him to recover his stall by an action of ejectment if he should be wrongfully put out of possession.

*Railroad—Eminent domain—Stall in market.*

The lessee of a stall in a market has no such estate as will entitle him to damages from a railroad company which condemns the market house.

Argued March 23, 1893. Appeal, No. 247, Jan T., 1893, by plaintiff, John T. Strickland, from judgment of C. P. No. 2,

Phila. Co., June T., 1892, No. 173, for defendant on demurrer. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for depriving plaintiff of use of stall in market.

Plaintiff averred in his statement that after 1871 the Central Market Company was the owner of a property at Seventeenth and Market streets, in the city of Philadelphia. Prior to Jan. 21, 1881, appellant rented certain stalls in the market from year to year. On that date, in order to retain appellant as a tenant, the market company leased to appellant, his heirs, executors, administrators and assigns, certain stalls therein, and the ground covered thereby, for a period of five years, and so on from one such period to another until notice as therein provided was given.

The lease was as follows:

" The Central Market Company do hereby let and demise unto John T. Strickland, residing at No. 363 North 65th street, Philadelphia, Pa., the stalls numbers 91, 122, 124, avenues Nos. 2 and 3, in the market house on Market street, and S. E. corner Seventeenth and Jones streets, in the city of Philadelphia, for the term of five years from the first day of January, 1881, at the yearly rent of two hundred and ninety dollars, payable quarterly in advance, on the first days of January, April, July and October. The lessee having paid the quarter due in advance, seventy-two dollars and fifty cents, the receipt of which is hereby acknowledged, agrees to use the said stalls for the sale of such articles only as are allowed by the by-laws of the said company, and to comply with all the rules and regulations which are or may be made by the said lessors for the government of the said market house, and for the regulation of the business within the same. The lessee covenants and agrees to pay the said rent punctually, and not to assign this lease or to underlet the premises, and on the expiration of the term or other determination of this lease, to deliver peaceable possession of the premises. Should the lessee fail to pay the rent punctually, or to comply with any of the provisions herein contained, he shall forfeit his right to the said stalls and this lease shall forthwith determine, and the lessors may take possession of the said stalls or any attorney may thereupon, as attorney for

the lessee, sign an agreement for entering in court an amicable action and judgment in ejectment against the lessee (without stay of execution) for the recovering of possession by the lessors of said stalls for which this shall be a sufficient warrant; and thereupon a writ of possession may forthwith issue; and the lessee hereby releases all errors and defects in such proceeding, and agrees that no objection or exception shall be taken thereto. All rights and liabilities herein given to, or imposed upon either of the parties hereto, shall extend to the heirs, executors, administrators, successors or assigns of such party. Should the lessee continue in possession of the said stalls with the assent of the lessors, after the expiration of the said term, then this lease shall continue in force for another term of five years, and so on, from term to term, until the lessors shall have given thirty days' notice to the lessee of their intention to determine the lease, and thereafter, on the expiration of the then current term, the lease shall determine."

Plaintiff averred that defendant on April 4, 1892, " and thereafter entered into and upon said premises, and took forcible possession of said stalls, and of the ground upon which they are situate, and wholly excluded plaintiff therefrom, without having then or at any time before or since tendered plaintiff any bond to secure them in the damages he suffered thereby, and without having tendered him any payment therefor or having attempted to agree with him as to the amount of his damages."

Defendant filed the following plea to the statement:

" And the said defendant saith that the said plaintiff ought to be precluded from maintaining said action, because the market house wherein stalls 91, 122 and 124 were fixtures was appropriated for public uses, under the authority of an act approved April 10, 1867, entitled, ' A further supplement to an act to incorporate the Pennsylvania Railroad Company, approved April 13, 1846, authorizing the Pennsylvania Railroad Company to construct additional railroad tracks, sidings, depots, workshops and other appurtenances, along, adjoining or contiguous to their own line of railroad, and the railroads now owned and leased, or hereafter to be owned and leased by them, and to straighten and improve the same, and to acquire the property upon which to construct the same, paying therefor the value of the property to be used or occupied,' on the

30th day of January, 1892, and upon said date last named the court of common pleas No. 1, to Dec. T., 1891, No. 906, approved sureties on a bond then approved and filed, to secure compensation to the Central Market Company, the owner of said market house, wherein said stalls were erected, as by the record thereof will appear.

" And the said defendant saith that by virtue of the authority conferred in said act and after the filing and approval of said bond, it did enter upon said premises and take the same for its uses, and not otherwise. All of which defendant is ready to verify."

Plaintiff demurred to the plea because: (1) " said plea does not traverse the causes of action set forth in plaintiff's statement ; (2) the statement shows that the plaintiff has an estate in the land taken by the defendants, and the plea does not aver that a bond was given to plaintiff, or other proceedings had, which would justify defendants in entering into possession of plaintiff's property without his consent; (3) in and by said plea it is admitted that the bond therein referred to was given only to the Central Market Company, and not to this plaintiff; (4) said plea admits the taking and destruction of plaintiff's estate in said land, and nowhere avers that security was either given or tendered him, or that any attempt was made to agree with him as to the value of his said estate ; (5) the record in said plea referred to, even if produced, would not justify the taking or destruction of plaintiff's estate in said land; (6) said plea nowhere denies that defendant, with full knowledge of plaintiff's estate in said land, and without securing him in any way, took forcible possession thereof, and excluded plaintiff therefrom ; (7) said plea is in other respects uncertain, informal and insufficient."

Judgment for defendant on demurrer. · Plaintiff appealed.

*Error assigned* was overruling demurrer and entering judgment.

*Alex. Simpson, Jr.*, for appellant.—The owner of an easement who has not been given security can maintain trespass for disturbance: P., W. & B. R. R. v. Williams, 54 Pa. 103 ; Lycoming Gas & Water Co. v. Moyer, 99 Pa. 615.

If appellant was a lessee or tenant of the premises, then the plea is bad, for it justifies under a bond given to the owner only, and does not traverse the allegations averring a tenancy, and notice thereof in writing, with a copy of the lease, prior to the taking : P. R. R. v. Eby, 107 Pa. 166.

Church v. Wells and Kincaid's Appeal, are reviewed in Craig v. First Presbyterian Church, 88 Pa. 51, and it is there shown that the decisions went upon the ground that the grant in those cases was of a mere license or privilege.   Woelpper v. Phila. was decided on the terms of the letting, and should be considered in connection with Wartman v. Phila., 33 Pa. 202, where it was held that the grant to the use of a market house in a public street must be held subject to the public's paramount right of removal.   See also Montgomery's Ap., 1 Pitts. R. 348.

Nor are the cases of Workman v. Mifflin, 30 Pa. 362 ; Voegtly v. P., Ft. W. & C. R. R., 2 Grant, Pa. 243 ; Knoll v. N. Y. C. & St. L. R. R., 121 Pa. 467 ; Penna. Schuylkill V. R. R. Co.'s Ap., 151 Pa. 569, in point.   They simply decided that a lien creditor of the owner must come upon the fund.

Here appellant had a situs upon the property which required a use of the property for its enjoyment, and by no ingenuity can his interest be likened to a lien or anything in the nature thereof.

With us a market has none of the incidents of the market established by the royal prerogative : Twelfth Street Market Co. v. P. & R. Terminal R. R., 142 Pa. 580.                    •

As is said by Judge BLACK, in his opinion, concurred in by KNOX, J., in Bell v. Ohio & Penna. R. R., 1 Grant, Pa. 105 : " Under the constitution of this state, private property cannot be taken for public use without just compensation.   This covers all kinds of property, personal and real, corporeal and incorporeal.   It is as comprehensive as the tenth commandment. You shall not take anything from a citizen that is his, without a full and fair equivalent."   That proposition is in no way impinged by the opinion of Judges LEWIS and WOODWARD in the same case, 25 Pa. 161, the court being equally divided. On the contrary it is recognized and applied in P. W. & B. R. R. v. Williams, 54 Pa. 103 ; Lycoming Gas & Water Co. v. Moyer, 99 Pa. 615 ; Phila. & Reading R. R. v. Getz, 113 Pa. 214.

*David W. Sellers,* for appellee.—The acts of April 10, 1867, April 13, 1846 and April 26, 1850, provided for the taking of estates in land as they are defined at common law; that is, an estate for years, for life, or in fee: R. R. v. Boyer, 13 Pa. 497; Turnpike v. Brosi, 22 Pa. 29. The words "lands, tenements and property" are not used in a new sense: R. R. Co.'s Ap., 115 Pa. 527; Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411; Reese v. Addams, 16 S. & R. 40; Cresson's Claim, 3 Clark, 107; Workman v. Mifflin, 30 Pa. 362; Voeghtly v. P. F. W. & C. R. R., 2 Gr., Pa. 243; Bean v. Kulp, 7 Phila. 650; Brown v. Corey, 43 Pa. 495; Getz v. R. R., 105 Pa. 547.

An owner of an incorporeal hereditament cannot have his damages assessed. The owner of the common law estate is held to be the trustee for all ownerships: Workman v. Mifflin, 30 Pa. 362; Knoll v. Ry., 121 Pa. 467. The renter of a stall in a market is only possessed of a right of property in a fixture. His interest is less than that of a pew holder in a church: Woelpper v. City, 38 Pa. 203; Church v. Wells, 24 Pa. 250; Craig v. Church, 88 Pa. 51; R. R. v. R. R., 151 Pa. 569; Hancock v. McAvoy, 151 Pa. 460.

OPINION BY MR. JUSTICE WILLLAMS, April 24, 1893:

What estate or interest has the lessee of a stall in a market house? This precise question does not seem to have arisen heretofore in this state, and it is not free from difficulty. The public sale of articles of food has been the subject of police regulation and control from the early days of the common law. The right to conduct such sales, or to open a place where sales might be conducted by others, was treated in England as a franchise held under the king, to be supported by express grant, or by prescription. In this country the right to open or conduct a market is derived from the municipality within whose limits the market is kept. In this state a market may be defined with practical accuracy as a place designated by the municipal authorities of a city or an incorporated town for the sale of articles necessary or convenient for the subsistence of men and domestic animals. A somewhat similar definition has been given by the courts in several of the states: Smith v. Newbern, 70 N. C. 18; Caldwell v. Alton, 33 Ill. 416. The market may be established on ground, or in a building, belonging to the municipal-

ity and conducted under the direct supervision of municipal officers; or it may be established on ground or in a building belonging to a private individual or corporation, under municipal permission and subject to municipal control. The right to establish a market includes the right to fix its location, and to shift that location from place to place when the convenience or necessities of the people require it. Wartman v. City of Phila., 33 Pa. 202. It includes the right to determine on what days of the week, and during what hours of the day, the market shall be open to the public, and on what days and during what hours it shall be closed. The right to regulate the markets includes a general supervision for purposes of cleanliness and ventilation, for the inspection of the quality of the articles sold, and the weights and measures employed in making sales. The municipality may require diseased or unwholesome articles to be removed, and enforce such regulations as seem desirable for the protection of the public health. The essential elements of a market are summarized in vol. 14, Am. and Eng. Encyclopedia of Law, page 466. They are as follows: (1) A place where sales may be made to the public. (2) The necessary and convenient fixtures for the business of weighing, dividing, measuring, and selling. (3) A system of police regulations fixing market days, or hours, providing for the lighting, cleaning, and watching of the market, and for testing and correcting the weights, measures and qualities of things sold. (4) Market officers authorized to enforce such police regulations for the protection of both buyers and sellers.

Now the market, though it may be owned by private parties, and opened by municipal permission, is subject to the police control already described, and to the visitorial power of the municipal government. Sales may be regulated at any time. The regulations may be changed as circumstances or the public health may require. The sale of some articles may be permitted at one time and prohibited at another. Special inspections may be made, and additional tests applied to ascertain the real quality of articles apparently suitable for sale. The business of a market is thus seen to stand on somewhat different ground from the ordinary lines of business, and the owner's control of a market house is less absolute than his control over his other real estate. The right to sell at a stall or stand in a market

is to be exercised by the lessee of the stall or stand subject to all the qualifications and restrictions that the municipality may impose. These are as much a part of the lease or contract as though actually written into it. He has no such exclusive right to the possession of his stall as he might have to a store or a dwelling house rented to him. He has no right to the ground covered by his stall, as ground; and he has no estate in the building, or definite legal standing, that will enable him to recover his stall by an action of ejectment if he should be wrongly put out of possession. Woelpper v. Philadelphia, 38 Pa. 203. He is the holder, by virtue of his lease, of a license to sell at the particular stall assigned or let to him, in such manner, on such days, and subject to such regulations as the municipality may direct or provide, and not otherwise. His right resembles that acquired by a pew holder in a church. Such a holder has no interest in the land under his pew, or the building above and around it, that abridges the power of the church to remove or take down and rebuild their house of worship: Church v. Wells's Executors, 24 Pa. 249. If the appellant is a loser by the exercise of the railroad company of its power of eminent domain against the market company, the owners of the building and his lessor, his estate in his stalls is not such as will sustain this action. He must look elsewhere for his damages.

The judgment of the court below is affirmed.