### Vragovich v. The City of Lebanon Parking Authority

*David J. Brightbill*, of *Lewis, Brubaker, Whitman & Christianson*, for plaintiff.

*Allen H. Krause*, for City of Lebanon Parking Authority.

GATES, P. J., March 15, 1973.—We are at the helm piloting a case upon which four other identical cases depend. We will try to steer a true course because we are in shallow water with few charts.

In each case the City of Lebanon Parking Authority, hereinafter referred to as the "condemnor," acquired by purchase real estate in the City of Lebanon tenanted by the various plaintiffs. In each case the tenancy was on an oral month-to-month basis. Ultimately, they were all given the proper 30-day legal notice to move. It is contended that plaintiff in this case was illegally

in possession in that she was in default of her rent. However, since she was given legal notice to move, terminating the tenancy, we believe this fact to be immaterial in the outcome of the matter.

Each of the five plaintiffs petitioned for the appointment of a board of viewers to which defendant condemnor filed preliminary objections. Although defendant denies that the purchase was in lieu of condemnation and would ordinarily require a hearing to resolve this fact before the board of viewers, we are of the opinion that defendant condemnor could have no legal or valid reason for acquiring the properties other than for the public purposes for which the authority was formed and, therefore, the purchase certainly was in lieu of condemnation. The remaining disputed facts are irrelevant to the outcome of the case.

Although no declaration of taking has been filed and the acquisition was by negotiation and purchase, the plaintiffs petitioned for the appointment of viewers claiming that they are entitled to receive special damages for displacement in accordance with section 601-A of the Eminent Domain Code of June 22, 1964, P. L. (Special Session) 84, as added on December 29, 1971, P. L. 635, sec. 8, et seq., 26 PS §1-601A, et seq. At the same time the legislature amended section 201 of the Eminent Domain Code by adding a number of new definitions. Subparagraph (8) defines "displaced persons." It is upon an interpretation of these new provisions that the outcome of these cases depends. The Legislative Reference Bureau has indicated to us that there is no recorded debate on the bill in the Legislative Journal, and, therefore, no indication of legislative intent. Consequently, we write on a clean slate.

Section 602 of the Eminent Domain Code defines the measure of damages in condemnation cases as: "Just compensation shall consist of the difference between the fair market value of the condemnee's

entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code."

With regard to a lessee upon condemnation, his measure of damages has been held to be the market value of his unexpired leasehold interest. Admittedly, the leases in question, being tenancies at will and the proper notice to vacate being given by the condemnor, they obviously have no market value. They are legally and properly terminated.

However, plaintiffs contend that the 1971 amendment to the Eminent Domain Code, more particularly section 603-A, compels the acquiring agency to make certain payments to any displaced person because of the acquisition for a public program or project without regard to the fact that there has been no condemnation and the fact that the tenant has suffered no compensable injury under the terms of the Eminent Domain Code as it existed prior to the amendment.

Philosophically, we agree with petitioners that no man should suffer a loss without a legal remedy. This would be possible in a perfect society. But there will never be a perfect society. Society is and always has been imperfect because man is imperfect. There can be a perfect dog, a perfect horse, a perfect bee, but never a perfect human being. I ofttimes find myself humming a familiar tune but for the very life of me I cannot recall its name. I find myself telling someone about a person whom I have known for many years and then suddenly cannot recall his name. Unfortunately, all too frequently I meet up with someone that I know and I recall a lot of things about him, but for the life of me I cannot remember his name. More than not, two people will witness the same event, come

into court, lay their hands on the Bible and swear to God to tell the truth and try to do so. The end result may startle the uninitiated because they tell diametrically opposed stories even though they both saw the same event at the same time. Some think one or the other is lying. This is not so. They are human beings and, as I have said before, they are not perfect.

Add to the foregoing two imperfect human beings conveying an idea from one to the other in an imperfect language and you get law suits just as the one before us. It is our considered opinion that the legislators did not intend to award displacement damages to people who are not forced to move by an act of condemnation and whose leases have legally expired.

President Judge Bowman of the Commonwealth Court in Hazleton Redevelopment Authority v. Hudock et al., 2 Comm. Ct. 670 (1971), recognized that constructive taking, sometimes referred to as inverse condemnation or "de facto" taking, is a body of case law which has been responsive to the reality that activities carried on incident to massive, complex and time consuming programs launched by government to solve some of the acute problems that beset our society may so substantially interfere with one's use and enjoyment of his property as to constitute a compensable injury in a constitutional sense. However, there must be a property interest taken or a substantial interference with one's use and enjoyment of his property in order that there be a compensable injury. Mere inconvenience is insufficient. Annoyance is the toll we pay for being a part of organized society.

Furthermore, when the legislature enacted the 1971 amendment to the Eminent Domain Code, it certainly must have been aware of the clear statement of the law of Pennsylvania made by Mr. Chief Justice Bell for a unanimous court in Fisher et al. v. Pittsburgh Public Parking Authority, 433 Pa. 113 (1969). In the

Fisher case the matter was on appeal from an order sustaining defendant's preliminary objections to plaintiff's petition for the appointment of a board of viewers. The question before the court was whether lessees of property purchased by a public parking authority are entitled, after the termination of their leases, to business dislocation damages under section 609 of the Eminent Domain Code. In that case plaintiffs were tenants of commercial properties in downtown Pittsburgh. The premises which they had occupied as lessees were purchased by the parking authority from the owners-lessors by *private negotiation and sale, rather than by statutory condemnation*. At the time of the sale to the parking authority, plaintiffs were lessees in possession and each was permitted by the authority to remain on the leased premises until each of the leases had expired. Only when all leases terminated did plaintiffs vacate the premises and the parking authority tore down the properties.

There, as here, there was no question that the authority had the legal power to acquire properties from the owners by private purchase. An authority is not mandated to proceed by condemnation nor is it prohibited from acquiring property by private purchase. The court interpreted section 609 which entitles a condemnee to relocation damages and a tenant also is entitled to recover for such business dislocation. It was plaintiffs' argument that by acquiring the property by private sale, while plaintiffs were in actual possession under their respective leases, the parking authority in effect condemned their properties and entitled them to dislocation damages. Chief Justice Bell held:

"There is no merit in plaintiffs' contention. *A tenant whose lease has expired is not a condemnee under the Eminent Domain Code.* A 'condemnee' is defined by §201 of the Eminent Domain Code as: 'The owner of

a property interest taken, injured or destroyed but does not include a mortgagee, judgment creditor or other lienholder.'" (Emphasis in original opinion.)

The court noted that there is the general proposition based upon the nature of property itself that, whenever the lawful rights of an individual to possession, use or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is taken and he is entitled to compensation. But, where tenants' leases expire, they no longer have any property interest in the premises and there could be no legal interference with or deprivation of their right to possession or use and enjoyment of their leasehold interest. Justice Bell went on to say:

"When a tenant's lease terminates prior to condemnation, the tenant suffers no compensable injury. (Citations omitted) It is even clearer that a tenant whose lease has terminated suffers no compensable injury where the Authority purchases instead of condemns the land."

· The Fisher court was not innovative in its conclusion. It has long been the law that a mere tenancy at will, such as we have here, is not such an interest in property to require the payment of damages: Stickland v. Pennsylvania R. R., 154 Pa. 348 (1893); Lyons v. Philadelphia & Reading Railway Co., 209 Pa. 550 (1904).

Of course, we are aware that Fisher is no precedent for an interpretation of the 1971 amendment here in dispute. But it is helpful. The legislature certainly would have used far clearer and firmer language in section 201(8) in defining "displaced person." In the definition they do say that a displaced person means any condemnee and it is clear that these plaintiffs are not in that category. They also define a displaced person as "other person not illegally in occupancy of

real property who moves or moves his personal property as a result of the acquisition for a program or project of such real property." In that the word "acquisition" is used in the context of the Eminent Domain Code itself, we can only ascribe its meaning to be an acquisition as a result of condemnation and not by purchase.

Furthermore, in section 603A, in describing the items of payments to be made to displaced persons, such as tenants, in paragraph (1) it is said that "Such amount shall be the additional amount, if any, over the actual rental or fair rental value of the acquired dwelling as determined in accordance with regulations promulgated under section 604-A but not to exceed four thousand dollars ($4,000)." From this we infer that it was intended that a displaced person be a person who also had an interest in the condemned property. In these cases we have tenancies at will which traditionally have been regarded as having no compensable property interest. Additionally, we have no condemnation.

### ORDER

And now, March 15, 1973, the preliminary objections are sustained and the order appointing viewers is vacated.