## Semple, Administrator, etc., v. City of Pittsburgh et al.

*Equity — Injunction — Ejectment — Landlord and tenant—Right of occupancy — Trespass — Lease — Jurisdiction—Space in market-house owned by municipality.*

1. Where plaintiff had gone into possession of space in a market-house owned by a municipality under a lease for three years beginning in 1907, and no subsequent lease or other arrangement had ever been made, a temporary injunction to restrain the city authorities from ousting him was denied.

2. Plaintiff had no standing to maintain a motion for a temporary injunction to restrain city officials from ousting him from space occupied in a market-house owned by the city, where his right of occupancy was terminable with reasonable notice, and where, the relation of landlord and tenant having ceased, plaintiff had become a mere trespasser.

3. Where plaintiff continues occupancy of space originally leased to him in a market-house owned by a municipality long after the expiration of the lease and without any new arrangement or agreement, the laws applicable to ejectment, landlord and tenant, and trespass are inadequate and equity has jurisdiction.

Petition for preliminary injunction. C. P. Allegheny Co., Jan. T., 1926, No. 3146, in Equity.

*William B. Secrist,* for plaintiff.

*Thomas M. Benner* and *Harry Diamond,* Assistant City Solicitors, for defendant.

EVANS, J., Jan. 20, 1926.—The plaintiff is an occupant of certain space in the Diamond Market of the City of Pittsburgh, and files this bill to restrain the City of Pittsburgh, its Mayor and Director of the Department of Public Works, from ousting him from that space.

The facts are not in dispute. For several years prior to 1907 Philip Flinn had occupied the space in question in conducting a restaurant. There is no evidence as to how Mr. Flinn came to occupy that space.

In 1907 Council of the City of Pittsburgh, by ordinance, duly ordained that: "All leases for said storerooms, stalls or stands shall be made by and filed in the office of the Director of the Department of Public Works, and are to be for three years."

Following the passage of that ordinance, Flinn entered into an agreement with the Director of the Department of Public Works for the occupancy of the space that he had theretofore been occupying for a period of three years, and he personally occupied that space in the conduct of a restaurant until his death in 1909. On his death, his brother, William Flinn, took out letters of administration upon his estate and continued the occupancy of that space and the conduct of the restaurant until the year 1917, when the old market-house was demolished and a new one erected. On the razing of the old market-house the restaurant was moved to a temporary building constructed on the pavement of the street adjoining. On the completion of the new market-house the Flinn restaurant was moved back into the new building and has

continued in that building from that time to the present. After the three-year agreement between Philip Flinn and the Director of the Department of Public Works, there has been no agreement entered into between the occupant of the restaurant and the city.

On Dec. 1, 1925, the Director of the Department of Public Works gave the following notice to the occupant of the restaurant:

"Estate of P. S. Flinn, Space No. 1, Diamond Market, City. Dear Sir: You are hereby notified to deliver up quiet and peaceable possession of the property known as Space No. 1, used as a restaurant in the Diamond Market, which you hold of the City of Pittsburgh, on or before the 31st day of December, 1925. Yours truly (Signed), Chas. A. Finley, Director."

Thereupon, on Dec. 24, 1925, this bill was filed and a motion for a preliminary injunction, thereafter to be final upon final hearing, was filed.

On Oct. 8, 1917, the City of Pittsburgh passed an ordinance fixing the rate to be paid for the space and stalls in the Diamond Market, and fixing the term of occupancy for one year, and provided that the agreement therefor, or lease, as it is called in that ordinance, "shall be made and filed in the office of the Director of the Department of Public Works."

In 1923 Council passed another ordinance which changed the rate to be paid for the space and stalls in the Diamond Market, but did not affect the provisions of the Ordinance of 1917 as to the preparation and filing of the "leases" for the space. Neither William Flinn nor the present party who succeeded him as administrator at his death ever made any application or received any permit for the occupancy of that stall under the Ordinances of 1917 and 1923.

There can be no doubt that the opinion of Judge Shafer, President Judge of this court, in the case of Levenson *v.* Pittsburgh, 54 Pitts. L. J. 294, in which, in substance, Judge Shafer held that there was no tenancy existing between the occupant of stalls and spaces in the city markets and the City of Pittsburgh, and that, upon reasonable notice, the occupant of the stall would be compelled to vacate, was the moving cause for the passage of the Ordinance of 1907, and the only change in that ordinance, in the Ordinances of 1917 and 1923, was the change of rate to be paid by the occupant and the time which the Director of the Department of Public Works could fix for his occupancy.

In the case of McTighe *v.* Schwartz, 223 Pa. 277, the plaintiff, Mrs. McTighe, held a lease, as it was called, for three years, dated May 6, 1907, of a stand in the Diamond Market. This was granted under the Ordinance of 1907. The defendant occupied the same stand and had for some years without any agreement with the City of Pittsburgh, excepting an implied agreement by sufferance to occupy for the time being. Schwartz having received notice from the city to vacate, the defendant refused and Mrs. McTighe filed a bill to oust him. Macfarlane, J., of this court, held:

"1. A court of equity has jurisdiction.

"2. The defendant was a mere licensee, and his right of occupancy was terminable at any time upon reasonable notice. He was not a tenant, and neither ejectment nor the proceedings provided by the Landlord and Tenant Acts are remedies.

"3. Defendant is a mere trespasser, and an action of trespass being inadequate, a decree should be made as prayed for, at the costs of defendant."

In his opinion, Judge Macfarlane sustained his position by the cases of Levanson *v.* Pittsburgh, Woelpper *v.* Philadelphia, 38 Pa. 203, and Strickland *v.* Pennsylvania R. R. Co., 154 Pa. 348, and his judgment was confirmed by the Supreme Court "on the findings of fact and the opinion of the learned judge of the Common Pleas."

Semple, Administrator, etc., v. City of Pittsburgh et al.

That the plaintiff in this case has no standing to sustain a motion for a temporary injunction is decided by the case of McTighe v. Schwartz and the cases therein cited.

Plaintiff's counsel insists that there is a tenancy and that the law of landlord and tenant applies, and that there having at one time been a lease for three years between Philip Flinn and the City of Pittsburgh, he held over under that lease, and applying the law of landlord and tenant, he was, therefore, a tenant from year to year; but the cases above referred to amply sustain the contention of the defendant that the relationship of landlord and tenant does not exist in the present case. We do not think an exhaustive discussion of the cases above referred to is necessary. A mere examination of them determines the law applicable to this case.

**Preliminary injunction refused.**    From William J. Aiken, Pittsburgh, Pa.