## Chestnut Hill and Mt. Airy Business Men's Association et al. v. City of Philadelphia et al.

*R. E. Scullin* and *A. Hemphill,* for plaintiffs.

*R. D. Solo,* assistant city solicitor; *Jerome Shestack,* first deputy city solicitor, and *Abraham L. Freedman,* city solicitor, for defendants.

*T. B. K. Ringe* and *Arthur Littleton,* amicus curiæ, for Pennsylvania Newspaper Publisher's Association.

*H. L. Sundheim,* amicus curiæ, for Business Men's Association of Germantown.

HAGAN, J., January 5, 1954.—This case was heard on September 23, 1953, by the writer of this adjudication. Thereafter, requests for findings of fact and conclusions of law were submitted by counsel, and at the request of counsel the issues of law were orally argued and briefs were submitted by counsel for the parties in interest.

### Pleadings and Issues Raised Therein

This action was instituted by the filing of a complaint in equity by some of the plaintiffs against original defendants. Thereafter, with leave of court, an amended complaint was filed by plaintiffs, the effect of which was (a) to eliminate Nana, Inc., as a party plaintiff and substitute Donald S. Leas, Jr., et ux., as parties plaintiff, and (b) to withdraw the averment in the original complaint charging that the contemplated action of the original defendants would constitute a nuisance. Upon petition and after notice and hearing thereon, City Meter-Ad Corporation was permitted to intervene as a party defendant in the proceeding. Answers were filed to the complaint by original defendants and by intervening defendant.

The complaint, as amended, averred (1) that plaintiff, Chestnut Hill and Mt. Airy Business Men's Association, is a corporation organized by proprietors of businesses in the Chestnut Hill and Mt. Airy sections of the City of Philadelphia for the purpose of encouraging business in these areas; (2) that plaintiffs Leas, de Palma, Barr, Rothe and Medinger were taxpayers and owners of premises abutting on Germantown Avenue in the Chestnut Hill section of the City of Philadelphia, upon the sidewalks of which the City of Philadelphia had erected one or more parking meters; (3) that plaintiff George Robertson & Son, Inc., was a taxpayer and the owner of premises which had a frontage upon Germantown Avenue and Highland Avenue in the Chestnut Hill section of the City of Philadelphia, and

that one or more parking meters had been erected by the City of Philadelphia upon the sidewalks of said premises fronting on Germantown Avenue and Highland Avenue; (4) that the City of Philadelphia, on October 13, 1952, had enacted an ordinance directing its department of procurement to invite proposals to use space on, or to attach devices for advertising purposes to, parking meters owned and operated by the city, and to enter into contracts therefor; (5) that pursuant to this ordinance, the City of Philadelphia had entered into a contract for the attachment of devices for advertising purposes upon parking meters in the business sections of Chestnut Hill and Mt. Airy, and (6) that the installation of devices for advertising upon the parking meters on the sidewalks of the premises owned by plaintiffs (a) would deprive the owners of property without due process of law; (b) would constitute an improper additional servitude and trespass upon said property, and (c) would be ultra vires and illegal. Plaintiffs, averring the need of equitable relief, pray for an injunction to enjoin the City of Philadelphia from installing advertising devices on parking meters located on the premises owned by plaintiffs, or in any other commercial areas in the Chestnut Hill and Mt. Airy sections of the City of Philadelphia, or in any other areas within the limits of the city.

Answers of the city and intervening defendant to the complaint (as amended by the admissions contained in the stipulation of facts filed of record in this proceeding at the hearing) admitted all of the relevant facts averred in the amended complaint, with the following exceptions: (1) With respect to plaintiff, Chestnut Hill and Mt. Airy Business Men's Association, it was averred that the association was not a proper party plaintiff in the proceeding, in view of the circumstance that it was neither a taxpayer nor the owner

of any property which could be affected by the proceeding; (2) with respect to those plaintiffs who owned premises abutting on Germantown Avenue, it was averred that none of them owned the fee in the bed of Germantown Avenue and that, therefore, they had no standing to maintain the proceeding, and (3) with respect to plaintiff, George Robertson & Son, Inc., which is the owner of premises abutting on Highland Avenue as well as Germantown Avenue, it was averred that this corporation did not own the fee in the bed of Germantown Avenue, but it was admitted that it had title to the fee in the bed of Highland Avenue and that, therefore, it had a standing to bring this action.

The stipulation filed at the hearing by counsel for plaintiffs and defendants and intervening defendant embodies all the relevant facts upon which the rights of the parties are to be adjudicated; and the findings of fact of the chancellor will be based upon the facts contained in this stipulation, supplemented by testimony taken at the hearing.

Therefore, the only matters in the proceeding which require adjudication are the issues of law which arise under the admitted facts. These issues can be grouped into two general categories: (1) Whether all of the plaintiffs are properly joined in the proceeding, and (2) whether the legal rights of any of the parties plaintiff who are proper parties to the proceeding have been infringed by the contract entered into by the city with the intervening defendant, in pursuance of which the latter corporation proposes to affix advertising signs upon parking meter stanchions owned and operated by the city and located on the sidewalks of premises owned by plaintiffs.

At the hearing, Pennsylvania Newspaper Publishers' Association, a nonprofit corporation organized for the purpose of protecting the business of public newspapers in the State of Pennsylvania, and Business Men's Asso-

ciation of Germantown, a Pennsylvania nonprofit corporation organized for the promotion of the interests of the businessmen of Germantown, were permitted by the court, with the assent of counsel for plaintiffs and counsel for defendants and intervening defendant, to participate as amicus curiæ in the oral arguments made by counsel for the parties in support of their requests for findings of fact and conclusions of law, and were granted permission to file briefs supplementing those filed by counsel for plaintiffs.

## Findings of Fact

1. Plaintiff, Chestnut Hill and Mt. Airy Business Men's Association, is a corporation duly organized under the laws of the Commonwealth of Pennsylvania and chartered June 26, 1901, for the purpose of encouraging trade with its members and for their mutual intercourse and promotion of the general business interests of Chestnut Hill and Mt. Airy.

2. Chestnut Hill and Mt. Airy is comprised of the sections within the City of Philadelphia encompassed by postal zones 18 and 19 respectively and the commercial sections of Chestnut Hill and Mt. Airy, being located along Germantown Avenue from Johnson Street on the South to Rex Avenue on the North and such streets crossing Germantown Avenue (including Highland Avenue) between Johnson Street and Rex Avenue, where property abutting on cross streets is zoned "Commercial".

3. Plaintiffs Donald S. Leas, Jr., and Fernanda W., his wife, John de Palma, James F. Barr, Herbert B. Rothe and Russell L. Medinger are citizens and taxpayers residing in the City of Philadelphia and the respective owners of premises abutting upon Germantown Avenue in the Chestnut Hill and Mt. Airy sections of the City of Philadelphia.

4. Plaintiff George Robertson & Son, Inc., is a corporation of the State of Pennsylvania, and the owner

of premises abutting upon Highland Avenue and Germantown Avenue in the Chestnut Hill section of the City of Philadelphia.

5. Defendant City of Philadelphia is a municipal corporation of the first class of the Commonwealth of Pennsylvania. By the Act of April 21, 1949, P. L. 665, 53 PS §3421, the General Assembly of the State of Pennsylvania gave to the citizens of Philadelphia the right to adopt their own charter and to exercise the powers and authority of local self-government, pursuant to section 1 of article XV of the Constitution of the Commonwealth; and in pursuance thereof a Home Rule Charter was adopted by the voters of the city, effective January 7, 1952.

6. Defendants Joseph S. Clark, mayor, and A. Albert Cherashore, commissioner of procurement, are duly constituted officers of the City of Philadelphia.

7. Intervening defendant, City Meter-Ad Corporation, is a corporation organized under the laws of the State of New York and duly registered to do business as a foreign corporation in the State of Pennsylvania. This corporation was formed for the purpose of engaging in the business of advertising through the medium of city parking meters.

8. Germantown Avenue and Highland Avenue (upon which the premises of plaintiffs referred to in findings of fact nos. 3 and 4 above abut) are public streets within the City and County of Philadelphia, and the descriptions in the deeds of the respective properties of plaintiffs call for Germantown Avenue as a boundary, and with respect to the premises of plaintiff, George Robertson & Son, Inc., the deed to it also calls for Highland Avenue as a boundary.

9. The origin and development of the public highway now known as Germantown Avenue is as follows: During the Eighteenth Century it was an Indian trail, and before the settlement of Germantown and its en-

virons it was opened to public use and was known as Germantown Lane or Road; when William Penn chartered the settlement of Germantown, he retained a reversionary interest in all of the land he conveyed; during the late Eighteenth and early Nineteenth Centuries a turnpike toll road was constructed, and the constructed road followed the general contours of the old Germantown Lane or Road; where the road was widened or its course changed, the toll road corporation purchased land necessary for the construction of the road in fee simple; pursuant to court order of June 13, 1803, the Germantown & Perkiomen Turnpike Road was ordered opened; and this road, as opened, essentially followed the contours of the old Germantown Road and was opened to a width of 60 feet; by Act of Assembly of the Commonwealth of Pennsylvania of February 2, 1854, the Township of Germantown was consolidated into and with the City of Philadelphia; in the late Nineteenth Century the City of Philadelphia condemned the Turnpike Road, freed it from tolls, and paid the Turnpike Company damages; this road is now known and designated as Germantown Avenue, and in a few locations it has been widened to a width of 70 feet, or five feet on each side; and the parking meter stanchions now located upon the properties of plaintiffs, upon which advertising is proposed to be affixed, do not fall within such five feet.

10. Prior to the commencement of this proceeding, the city had caused to be erected upon the sidewalks of the premises owned by plaintiffs on Germantown Avenue and Highland Avenue one or more parking meters of the type and design shown on the photographs offered in evidence at the hearing and marked "Plaintiffs' Exhibits Nos. 1, 2, 3 and 4".

11. The revenue derived by the city from the sums collected from the users of the parking meters has been

sufficient to cover all capital charges and maintenance and operating costs of the city.

12. On October 13, 1952, the mayor of the city approved the following ordinance, which had been duly passed by City Council:

"Authorizing and directing the Department of Procurement to invite proposals to use space on or to attach devices to parking meters for advertising purposes, and to enter into a contract or contracts with the highest responsible bidder or bidders for the use of such parking meters for advertising purposes under certain terms and conditions.

"The Council of the City of Philadelphia hereby ordains:

"Section 1. The Department of Procurement is hereby authorized and directed to invite proposals, for the right to use space on or to attach a device to parking meters for advertising purposes by the successful bidder or bidders, and to enter a contract or contracts, on behalf of the City of Philadelphia, in form satisfactory to the City Solicitor, with the highest responsible bidder or bidders.

"Section 2. In addition to such specifications, terms and conditions as may be prescribed by the Procurement Department, each contract for the use of parking meters for advertising purposes shall also contain provisions requiring:

"1. That prior to placing any advertising on the parking meters it shall first be approved by the Procurement Department as to subject matter and the manner of presentation thereof, and by the Department of Streets as to its effect on the regulation of traffic.

"2. That the successful bidder shall furnish insurance which in the opinion of the City Solicitor will adequately protect the City against any claims which may be made against the City by reason of such advertising.

"Section 3. The Procurement Department shall not approve any proposed advertising which in its opinion is misleading, indecent or detracts from public decorum. The use of parking meters for advertising liquor, patent medicines, or any advertising in connection with any political campaign is hereby expressly prohibited."

13. In pursuance of the aforesaid ordinance, defendant commissioner of procurement, on behalf of the city, on April 14, 1953, entered into a contract with intervening defendant, City Meter-Ad Corporation, by the terms of which the corporation was granted, for the consideration therein mentioned, the right and privilege of installing advertising devices on the parking meter stanchions owned by the City of Philadelphia and located upon the sidewalks of premises within the city, and the city reserved the right to designate the parking meters upon which the advertising devices were to be installed by the corporation. A copy of the contract is attached to the answer filed in this proceeding by the intervening defendant and is marked "Exhibit A."

14. In pursuance of the aforesaid contract, City Meter-Ad Corporation has installed advertising devices upon parking meter stanchions owned by the city and located upon the sidewalks of premises designated by the city in various commercial areas within the limits of the City. Samples of the advertising signs were offered in evidence at the hearing and photographs showing the attachment of these advertising devices to parking meter stanchions were offered in evidence at the hearing.

15. The advertising, for the promotion of which defendant proposes to make use of the city's parking meter stanchions, is commercial in character and does not and is not intended to promote the public health, safety, morals or general welfare.

16. Unless restrained in this proceding, the City of Philadelphia proposes to direct the intervening defendant to install advertising devices upon the stanchions of parking meters which are now located upon the sidewalks of the premises owned by plaintiffs.

17. Plaintiffs have not authorized defendant city or the intervening defendant to install advertising devices upon the stanchions of the parking meters which are located upon the sidewalks of the premises owned by plaintiffs.

18. Plaintiffs produced no evidence that the proposed installation of advertising devices upon the parking meter stanchions located upon the sidewalks of their premises will obstruct or interfere with pedestrian or vehicular traffic, or that the proposed maintenance of the advertising devices would constitute a public or private nuisance.

## Discussion

The first question for adjudication by the chancellor is whether each of the parties plaintiff has such an interest in the proceeding as entitles him or it to maintain the action. With respect to the character of their interests, plaintiffs may be grouped into three classes: (1) Chestnut Hill and Mt. Airy Business Men's Association, a nonprofit corporation, which owns no property which could be affected by this proceeding; (2) Donald S. Leas, Jr., et ux., John de Palma, James F. Barr, Herbert B. Rothe and Russell L. Medinger, who are the owners of properties abutting upon Germantown Avenue, and (3) George Robertson & Son, Inc., which is the owner of the property abutting upon Highland Avenue as well as upon Germantown Avenue.

The city contends that only plaintiff in the third classification, George Robertson & Son, Inc., as the owner of a property abutting on Highland Avenue, is entitled to bring this action. With respect to Chestnut Hill and Mt. Airy Business Men's Association, the city

points out that the association is neither a taxpayer nor the owner of any property which could be affected by this proceeding; and, with respect to plaintiffs in the second classification, who own property abutting upon Germantown Avenue, the city takes the position that these plaintiffs have not established that the titles of their respective properties extend to the center of Germantown Avenue, and that, therefore, they cannot, either in the rôle of taxpayers or as abutting property owners, question the right of the city in this proceeding to make use of the bed of Germantown Avenue.

The city's contention that Chestnut Hill and Mt. Airy Business Men's Association is not a proper party plaintiff in this proceeding is well taken. If plaintiffs had alleged and proved that the contemplated advertising devices would constitute a neighborhood nuisance, it might be successfully contended that a nonprofit organization representing the interests of the community which would be affected by such advertising would be a proper party to bring an action to restrain the contemplated nuisance. However, in the amended complaint in equity filed by plaintiffs all the averments set forth in the original complaint, suggesting that the contemplated advertising would constitute a public or private nuisance, were eliminated, and, of course, no proof as to nuisance was offered at the hearing. In none of the briefs submitted by counsel on behalf of plaintiffs is any attempt made to justify the inclusion of this association as a party plaintiff. Under these circumstances, we hold that Chestnut Hill and Mt. Airy Business Men's Association is not a proper party plaintiff.

We do not agree with the city's contention that plaintiffs in the second classification have shown no right to maintain the complaint by reason of the circumstances that, although their respective properties abut upon Germantown Avenue, they have not shown that they

have title to the bed of that thoroughfare. Under the stipulated facts, it is admitted that Germantown Avenue is a public highway, that the properties owned by these plaintiffs abut upon this highway, and that in the respective deeds of the plaintiffs Germantown Avenue is given as one of the boundaries of each of the properties. The legal conclusion therefore follows, in the absence of evidence to the contrary, that the title of these plaintiffs extends to the middle of Germantown Avenue. The evidence on which the city relies to support its position that the respective titles of the plaintiffs do not extend to the middle of Germantown Avenue is that contained in the stipulation of facts, which are contained in the chancellor's finding of fact no. 9.

In its brief the city contends that the history of the origin and development of Germantown Avenue casts a "substantial doubt" on the claim of these plaintiffs that the titles of their respective properties extend to the middle of Germantown Avenue. With this contention we cannot agree. The deeds to these plaintiffs call for Germantown Avenue as a boundary, and, therefore, presumptively, and in the absence of clear evidence to the contrary, the titles of plaintiffs extend to the middle of the highway. No principle is more firmly established in the law of Pennsylvania than that title to property abutting on a public street extends to the center of that street. (Hindin et al. v. Samuel, Mayor, et al., 158 Pa. Superior Ct. 539; Scranton v. Peoples Coal Company, 256 Pa. 332), and that, where a public street or highway is called for as a boundary in a deed, the fee passes to the center of the street or highway: Paul v. Carver, 24 Pa. 207; Saccone v. West End Trust Co., 224 Pa. 554; Seibert v. Sebring, 55 Pa. Superior Ct. 475. The history of the origin and development of Germantown Avenue is not sufficient to rebut the presumption of the ownership of plaintiffs to the center of that thoroughfare. We, therefore, hold that plaintiffs

who own properties abutting on Germantown Avenue are proper parties to this proceeding.

With respect to plaintiff in the third category, George Robertson & Son, Inc., which is the owner of the property abutting on Highland Avenue as well as Germantown Avenue, defendants admit that the title of this plaintiff extends to the center of Highland Avenue, and that it is a proper party plaintiff in this proceeding.

However, it is clear that all of the plaintiffs to this proceeding (with the exception of Chestnut Hill and Mt. Airy Business Men's Association) in their capacities as citizens and taxpayers are proper parties to this proceeding, without regard to their status as owners of property abutting upon Germantown Avenue or Highland Avenue. Although plaintiffs' briefs do not attempt to sustain the right of plaintiffs to maintain this action as citizens and taxpayers, the law of Pennsylvania clearly gives them such right. See Bernstein v. Pittsburgh, 366 Pa. 200; Hoffman et al. v. Pittsburgh et al., 365 Pa. 386.

In order to avoid the constant use of language distinguishing the plaintiff, Chestnut Hill and Mt. Airy Business Men's Association (which corporation we have held is not a proper party to the proceeding), from other plaintiffs (whom we have held to be proper party plaintiffs), the latter will be hereinafter designated in this adjudication as "plaintiffs".

The second matter requiring adjudication is whether the legal rights of plaintiffs have been impaired by the contract entered into by the city with intervening defendant, the City Meter-Ad Corporation, in pursuance of which the latter corporation proposes to affix advertising signs upon parking meter stanchions owned and operated by the city and erected on the sidewalks of the premises owned by plaintiffs.

The relevant facts upon which the legal rights of the parties are to be adjudicated are not in dispute. They are as follows: (1) The advertising, for the promotion of which defendants propose to make use of the city's parking meters, is commercial in character and bears no relation to the public safety, health, morals or general welfare; (2) plaintiffs are the owners in fee of the premises upon the sidewalks of which the parking meter stanchions are erected; (3) the parking meter stanchions on which the city proposes to affix the devices of advertising are the property of the city; (4) the parking meter stanchions are now legally located upon the sidewalks of plaintiffs and have been located thereon by the city for the purpose of regulating traffic; (5) the affixing by the intervening defendant of commercial advertising signs on the parking meter stanchions will not obstruct or interfere with pedestrians or vehicular traffic and will not constitute a private or public nuisance, and (6) no compensation will be made to plaintiffs by defendants in respect to the attachment of the advertising signs upon the parking meter stanchions.

Plaintiffs base their right to restrain defendants from installing the devices for the display of commercial advertising on the parking meter stanchions on the basis of the above-recited facts and on the following principles of law: (1) That plaintiffs, as owners of premises abutting upon Germantown and Highland Avenues, have title to the fee of the sidewalks of those highways upon which defendants propose to erect the advertising devices; that their title to the fee is subject only to the public easement in the sidewalk, and (2) that the city, in the exercise of its police power, has the right to regulate and control the sidewalks for public uses and purposes only, and that, per contra, the city has no right to use or permit the use of sidewalks for private purposes, and that, therefore, the private use

which the city and the intervening defendant propose to make of the sidewalks would constitute a trespass thereon and would result in the taking of property of plaintiffs without due process of law.

On the other hand, defendants contend that the city, having had conferred upon it by the legislature a Home Rule Charter, under which it is given broad powers in matters of local concern, has a right to franchise the use of parking meter stanchions (which are lawfully owned and operated by the city and which are now lawfully located on the sidewalks of the premises of plaintiffs) for commercial advertising, where such use will not add any burden to the traveling public or interfere with any special rights of abutting owners, and where such use is not inconsistent with the primary purpose for which the parking meter stanchions were originally installed.

We shall first consider the legal propositions advanced by plaintiffs.

1. *Plaintiffs, as the owners of premises abutting upon Germantown Avenue and Highland Avenue, have title to the fee of the sidewalks of those highways upon which defendants propose to erect advertising devices, and their title to the fee is subject only to the public easement in the sidewalk.*

We have heretofore, affirmed the above as a valid legal principle, in passing upon the right of plaintiffs to maintain this proceeding against defendants, and no purpose would be served by any further discussion.

2. *The city, in the exercise of its police power, has the right to regulate and control the sidewalks for public uses and purposes only, and that, per contra, the city has no right to use or permit the use of the sidewalks for private purposes, and that, therefore, the private use which the city and intervening defendant propose to make of the sidewalks would constitute a*

*trespass thereon, and would result in the taking of property of plaintiffs without due process of law.*

It is axiomatic that the State of Pennsylvania, in the exercise of its police power, has the right to regulate the use of its public highways, and that it may delegate this power to its political subdivisions. From there we proceed to the uncontroverted proposition that, prior to the adoption of a Home Rule Charter on January 7, 1952, there has been delegated by the State to the City of Philadelphia, by various acts of assembly, power to regulate and control public highways of the city as fully and completely as such power could have been exercised by the State. Therefore, in and by its Home Rule Charter, the City of Philadephia did not acquire any greater rights in and to the public highways of the city than it had theretofore possessed and exercised. We are, therefore, in accord with the proposition advanced by counsel for plaintiffs, that the city charter has nothing to do with the determination of the issues raised in this proceding, and that no purpose would be served by a consideration of the sovereign powers granted by the legislature of the State by the Act of April 21, 1949, in pursuance of which the Home Rule Charter was adopted by the city.

Therefore, in determining the issues of law in this proceeding, we can substitute the sovereign State of Pennsylvania for its political subdivision, the City of Philadelphia and, if it can be demonstrated that the State could validly exercise the powers which the city is here attempting to exercise, then it must inevitably follow that the complaint must be dismissed. On the other hand, if it is found that the State lacks the power to exercise the rights which the city is here attempting to exercise, then it follows that the State could not delegate to one of its political subdivisions power which the State itself could not validly exercise. The ultimate question for adjudication, therefore, is this: Has the

sovereign—be it State or city—the power to grant a franchise to a private corporation, permitting it to make a private use of the sidewalks of the public highways, where the ownership of the fee in the sidewalks is in the abutting owners, who have not consented to the use of the sidewalk and have received no compensation therefor?

The answer to this question must be in the negative. A case almost directly in point is Seibert v. Sebring, 55 Pa. Superior Ct. 475, supra, where it was held that a borough has no right to grant to the owner of a garage a license to erect a sign in front of the property of another abutting on a public street, without the latter's permission, for the sole purpose of advertising the garage owner's private business, even though the sign may be useful in directing travelers driving into the borough to a place where they may find garage accommodations. The Superior Court said at page 477-79: "The plaintiff's ownership of the lot fronting on Allegheny Street and Locust Alley vests in him the fee to the center of the street and alley subject only to the easement of the borough for legitimate municipal purposes. And the erection by the defendant of the sign complained of which conserves no purpose whatever except the advertisement of his own private business . . . constitutes a continuing and permanent trespass on the land.

"While it is true that municipalities have broad powers relative to their public highways for all municipal purposes we know of no case where it has been held that they could give permission to use any part of the highway for a purely private purpose. All of the cases cited to us by the learned counsel for the defendant look toward the conservation of some public utility or some private necessity dependent thereon. In the case of Benner v. Junker, 190 Pa. 423, it was held that, 'no property owner no matter what the necessities

226

of his trade may be has a right to use the sidewalk in front of his neighbor's residence for business purposes. He not only has not the right to use it continually, he has not the right to use it at all for such purposes. If he does so use it a court of equity will enjoin him.' Municipalities have been allowed to fix by ordinance the use of the footway for cellar entrances, balconies, bay windows, the planting of shade trees along the highways, etc., but all of these powers must be by general regulations applied to all people alike. They have been held to have the power to grant a property owner the right to lay a water pipe in the street, to conduct the water from his residence to certain other houses which he owns, but this was because the ordinance was held to be within the purview of the powers of the municipal authorities to regulate the water supply of its citizens. No case, however, maintains or even suggests the right of a municipality to grant to an individual a license to erect a permanent structure in front of the property of another on a public street for the sole purpose of advertising his private business. It has been argued by the counsel for the defendant that this sign conserves a public purpose by directing travelers driving into the borough to a place where they may find garage accommodations, but if this view were upheld the entire front of the plaintiff's lot might be screened from the view of street by the erection of additional signs setting forth that the hotel was three blocks further on, the brewery in some other section of the city and the various dealers in dry goods and groceries might also advertise their respective locations."

The right of plaintiffs to an injunction to restrain defendants from carrying into effect the provision of the city ordinance under consideration is supported by the following clearly established legal principles: (1) That a use of private property by the sovereign is a partial taking of the property; (2) that under the

fourteenth amendment to the Constitution of the United States private property cannot be taken except by due process of law; (3) that the city, in its sovereign capacity, may take or use private property by the lawful exercise of one of three powers, to wit: (a) The power of taxation; (b) the power of eminent domain, and (c) the police power; (4) that the valid exercise of the power of eminent domain requires that compensation be paid to the owner of the property taken or used; (5) that where private property is taken by the valid exercise of the power of taxation or by the police power, the sovereign is not required to make compensation, and (6) that the sovereign cannot lawfully exercise any of the above powers except for *public uses and purposes* and thus the power of taxation, the power of eminent domain and the police power must be exercised for *public* and not for *private* uses and purposes.

In the instant case, it is conceded by counsel for defendants that the franchise which the city has granted to the City Meter-Ad Corporation, permitting the latter to make use of the sidewalks of Germantown Avenue and Highland Avenue for the purpose of promoting its business of private advertising, is not founded upon or attempted to be justified by the city's taxing power, or the city's police power, or the city's power of eminent domain. Thus, the brief submitted by the city solicitor states: "The city here acts under neither its taxing, nor its police power", and: "The Ordinance of 1952, supra, is neither a taxing nor a police measure."

Obviously, the city is not proceeding under its power of eminent domain, and thus, the city is not attempting to justify its franchise of the use of the sidewalks to a private corporation for private purposes by any of the three lawful methods of taking or using private property.

What then is the ground upon which the city bases the ordinance of 1952?. It is stated in the city's brief:

"The City's action is rather based on a power of sovereign to franchise a use of the streets which neither conflicts with the primary purpose of streets, nor is prohibited by the Constitution of the Commonwealth or of the United States."

In the brief filed by intervening defendant, the legality of the ordinance is attempted to be justified as follows:

"The city rests its power to pass this ordinance on its power to utilize its property in any way not inconsistent with the use for which it became city property."

The soundness of the theory advanced by defendants supporting the legality of the ordinance must be tested by the principle of whether the object and purpose of the ordinance is to benefit the public rather than the procuring of revenue. Any exercise of power by a municipality must serve a public or municipal purpose in order to be legal: 37 Am. Jur., Municipal Corporations, §119; 37 C. J. S. 148, Franchises, §3. As before stated, defendants admit that the ordinance under consideration was not intended as an exercise of the city's taxing power. This admission was compelled by the principle enunciated in the case of William Laubach & Sons v. Easton, 347 Pa. 542. In that case the Supreme Court recognized the right of a municipality, in the exercise of its police power of regulating traffic within its limits, to install parking meters on sidewalks of streets, but the court made it very clear that the exercise of this right must be anchored to the police power when it said, at p. 548:

" 'If anything can be considered as settled under the decisions of our Pennsylvania courts it is that municipalities under the guise of a police regulation cannot impose a revenue tax'."

A case paralleling that last cited is In re Opinion of the Justices, 297 Mass. 559, 8 N. E. 2d 179, 108 A. L. R. 1152, and 130 A. L. R. 316, where it was held:

"A municipality cannot be authorized to turn this plan of using parking meters into a business for profit over and above the expense involved in the proper regulation of the public use. It cannot establish a commercial enterprise on the public easement. To do that would be to divert to alien purposes a property taken for public uses and paid for by funds raised by taxation."

As defendants do not attempt to justify the legality of the ordinance by the city's taxing power, its police power or its power of eminent domain, they appear to have conjured up some nebulous power by which a sovereign can lawfully make use of the sidewalks of abutting owners for private uses and purposes without the payment of compensation therefor. Counsel for defendants attempt to buttress their nebulous theory by citing a line of authorities in this and other jurisdictions which give municipalities broad rights in and authority over its public highways. Plaintiffs concede that a municipality in the proper exercise of its police power has the right to make almost unlimited use of the city's highways for public uses and purposes, and the nature and extent of these public uses and purposes are commented on in the case of Wood v. McGrath, 150 Pa. 451, 455, as follows:

"The conclusion, both of the master and court below, was based upon the idea that the abutting owner is the owner of the fee of the land occupied by the street, and the laying of a drain pipe under the street without his consent is an invasion of his right as owner of the land. How fallacious this proposition is, is at once apparent when it is considered that the right of the public in the streets of cities, boroughs and towns is far more extensive than the mere right to use the sur-

face of the land for the purpose of passage. It is beyond all question that, in the municipal organization referred to, the governing authority possesses just as clear a right to make use of the subsoil as of the surface, for very many purposes for which the surface is not, and, ordinarily, cannot be, used except with great inconvenience. It may undoubtedly, either by itself, or by its delegated authority to others, dig up the soil to lay water pipes, gas pipes, sewers, drains, electric wires, telegraph and telephone wires, cables and doubtless subterranean railways, every one of which uses is in direct and exclusive hostility to the abutting owners' right in the fee. And the grant of these privileges may be made, and is constantly made, to other corporations or associations without the least regard to the will or consent or property right of the adjoining owner. He is not consulted about such matters. He has no right to prevent such uses if the public authorities agree to it; in short, he is not the unqualified owner of the subsoil of the street; and the cases are most rare where he has the opportunity to avail himself of his reversionary right resulting from the abandonment of the highway. If the municipality, or any locus tenens thereof, desires to lay water pipes, gas pipes, sewers, or drains in the subsoil, he has no right to compensation on account of such use, nor can he intervene in the courts to prevent it. He has no title which will enable him to do so."

The above cited case gives emphasis to the broad uses which a municipality may make of its public highways in the exercise of its police power.

However, the case of Commonwealth v. William Laubach & Sons v. Easton, 347 Pa. 542, 544-46, supra, gives emphasis to the equally broad rights of owners of property abutting on public highways in these words:

"It is first contended that an abutting property owner ordinarily has title to the fee to the center of the highway subject to the public easement and that, therefore, the right of way may only be employed by the state for the purposes for which it was taken, and that, specifically, each property owner and his business and social guests have the right to park their motor vehicles on the streets in front of such property for a reasonable time free of any charge.

"When land is taken for use as a highway the owner does not surrender his entire title to the land so taken but reserves rights above, below and on the surface that do not interfere with the use of such land for highway purposes: Cain v. Aspinwall-Delafield Co., 289 Pa. 535, 539, 137 A. 610. He may prevent an unlawful use of the highway: Hopkins v. Catasauqua Mfg. Co., 180 Pa. 199, 201, 36 A. 735; Breinig v. Allegheny Co., 332 Pa. 474, 478, 2 A. 2d 842. He may even use in a reasonable manner the surface of the street temporarily for purposes necessarily incident to the abutting land, e.g., storing building material: Mallory v. Griffey, 85 Pa. 275; Piollet v. Simmers, 106 Pa. 95. 'Even where the State, by purchase or eminent domain, acquires a fee in the land upon which the highway rests, the abutting owner may prevent such unlawful uses of the street in front of his premises as amount to private nuisances, such as parking. But, the use of the highway by the public for transit is free from restriction by the abutting owner or others': Breinig v. Allegheny Co., supra, p. 479. The abutting owner has also by the same authority (p. 481) the right of approach to his property subject to regulations by the state under its police powers. It is well settled here that the servitude imposed by the easement of public passage on city streets is necessarily greater than that imposed in the open country: McDevitt v. People's Nat. Gas Co., 160 Pa. 367, 374, 28 A. 948; Penna. R. R. Co.

v. Montgomery Co. Pass. Ry., 167 Pa. 62, 70, 31 A. 468. At the same time the public has a paramount right to travel over a public highway.

"In a congested district there is bound to be an interference between the rights of those who are lawfully using the public highways and abutting owners just as there are between different travellers and between different abutting owners. It is due to these impacts that the state *under its police power* may regulate the use of highways in the interest of the whole public in so far as such regulations are not unreasonable or oppressive." (Italics supplied.)

No appellate court of this State has ever held that private property may be taken or used by the sovereign for private uses and purposes. On the contrary, it has been consistently held in this State that private property may not be taken or used by the sovereign for private purposes, either by the exercise of the police power or by the power of eminent domain.

The principle that a municipality cannot make use of its public highways for private purposes is clearly enunciated in the case of Ormsby Land Co. v. Pittsburgh et al., 276 Pa. 68, supra. There a street was laid out and dedicated to the public as a thoroughfare. The street was never opened, although it later was accepted by the City of Pittsburgh as one of its highways. Thereafter, the city passed an ordinance under which portions of the land included within the street were leased to a private corporation at an annual rental of $1,940. Plaintiff, the owner of the fee to the land over which the street was laid out as well as of the immediately abutting property, filed a bill to have the lease declared void. In affirming the decree of the lower court, declaring the lease void, the Supreme Court said, at page 69:

"*Private property cannot be taken for private purposes and such would be the result in this case had the*

*ordinance of the city authorizing a lease of the prop-. erty been held valid.* Where land is dedicated for street purposes by the owner and accepted by the municipality, such action is equivalent to a taking (10 R. C. L. 89, 91), and the property so taken may not lawfully be applied to another and distinct purpose by the municipality *unless it be a public use not inconsistent with its use as a highway.* In Sterling's App., 111 Pa. 35, 40, we said: 'By appropriating land for the specific purpose of a common highway, the public acquires a mere right of passage with the powers and privileges incident to such right. The fee still remains in the landowner notwithstanding the public have acquired a right to the free and uninterrupted use of the road for the purpose of passing and repassing; he may use the land for his own purpose in any way that is not inconsistent with the public easement. He may, for example, construct underneath the surface passageways for water and other purposes, or appropriate the subjacent soil and minerals, if any, to any use he pleases, provided he does not interfere with the rights of the public. In other words, the only servitude imposed on the land is the right of the public to construct and maintain thereon a safe and convenient roadway, which shall at all times be free and open for public use as a highway.' In Dillon on Municipal Corporations, 5th ed., section 1176, it is said: 'Not even the legislature can authorize the condemnation of private property for other than a public use; hence the appropriation of a street to a private purpose cannot be justified even by legislative authority.'

"In view of the foregoing authorities, it seems clear that land dedicated to use as a highway cannot be utilized for other than such purpose, except in cities and boroughs, and in those municipalities *only for additional public use* as above indicated. Otherwise, a corporation invested with the right of eminent domain

might lease property acquired under such right to a corporation or individual engaged in commercial or other pursuits and thus deprive the owner of compensation for the additional burden. If such action is possible, private property may be indirectly taken for private purposes; certainly, such is not the law." (Italics supplied.)

In the comparatively recent case of Hoffman et al. v. Pittsburgh et al., 365 Pa. 386, the Supreme Court in its opinion made extensive quotations from the Ormsby case in holding that a municipal corporation has no implied or incidental authority to sell for private use land dedicated to or held by it in trust for the public use, or to extinguish public uses in such property, even though the municipality intends to apply the proceeds of the sale of the land to public purposes.

In their briefs, counsel for defendants cite many Pennsylvania cases which hold that private corporations or persons may be granted licenses or franchises by a municipality to make use of the public highways: Wartman et al. v. City of Philadelphia et al., 33 Pa. 202; Woelpper v. City of Philadelphia, 38 Pa. 203; Smith v. Simmons, 103 Pa. 32; Wood v. McGrath, 150 Pa. 451, supra; City of Philadelphia v. Holmes Electric Protective Co. of Philadelphia, 42 D. & C. 513; City of Philadelphia v. Holmes Electric Protective Company, 335 Pa. 273; Owl Protective Company, Inc., v. Public Service Commission, 123 Pa. Superior Ct. 382. There is no doubt that these cases hold that a municipality has the power to license or franchise the use of its public highways for public uses and purposes, but none of these cases are authority for the proposition that the State or any of its political subdivisions has authority to grant a license or franchise to make use of the public highways for *purely private purposes.*

Thus, the Wartman and Woelpper cases dealt with the right of the City of Philadelphia to establish and

regulate public market places and to make use of the public highways for such purposes. In the early Nineteenth Century, when these cases were decided, public markets were considered to be necessary and essential for the public welfare and, in the first cited case, the Supreme Court at page 209, said:

"It is, therefore, the common law of Pennsylvania, that every municipal corporation which has the power to make bylaws and establish ordinances to promote the general welfare, and preserve the peace of a town or city, may fix the time or places of holding public markets for the sale of food, and make such other regulations concerning them as may conduce to the public interest."

However, with the changing times and consequent changing of public custom, the use of the public highways for the sale of food is no longer considered to be a public use of the highways. Thus, in the case of Hindin et al. v. Samuel, mayor, et al., 158 Pa. Superior Ct. 539, supra, the court had under consideration an ordinance of the City of Philadelphia concerning the issuance of licenses to peddlers of food upon the public highways. The ordinance required that no license could be issued without the consent of the occupant or owner of the premises abutting the highway, in front of which the sale of food was proposed to be conducted. The ordinance was challenged on the ground that it constituted an illegal delegation of executive power to owners and occupants of real estate. In rejecting this attack on the ordinance, the Superior Court said, at page 542:

"The sale of food upon the public highways or streets by private individuals for their own purposes and profits is not a *public use or a public function of those streets or highways* and a property owner or lessee may object and decline to have his property used for the business enterprise of other people. Consequently, the section

of the ordinance to which appellants object takes away no rights from the plaintiffs and merely gives an additional remedy to the owners and lessees of properties for the enforcement of rights they already possess under the law." (Italics supplied.)

The cases of Smith v. Simmons and Wood v. McGrath dealt with the right of a borough to grant permission to the owner of property abutting on a public highway to use the subsoil of the highway for the construction of a drain. The court sustained the borough's action, but there was clearly implicit in these decisions that the construction and operation of the drain was for the purpose of promoting the public health and that, as a municipality could make a valid use of the public highways for such a public purpose, the power could be delegated by the municipality to the owner of private property abutting on the public highway.

The cases of City of Philadelphia v. Holmes Electric Protective Company, in the lower court and on appeal, and the case of Owl Protective Company v. Public Service Commission concerned litigation growing out of franchises granted to a corporation under which the latter had secured permission to use the subsurface of the public highways for burglar alarm systems and telephone wires. The authority of the municipality to grant such franchises was not in issue and was not discussed in any of the cases. However, it is clear that if the right of the municipality to grant such franchises had been challenged in these cases, it would have been sustained on the ground that telephone and burglar alarm systems constitute business facilities affected with a public interest, possessing as they do a direct relation to the public safety and welfare.

It is clear, therefore, that no sound parallel can be drawn between the foregoing cases relied upon by counsel for defendants and the instant case. In the cited cases, some public use or purpose was served by

the permitted use of the public highways, while in this case defendants have never attempted to argue that the business of private advertising has any relation to the public health, safety or general welfare.

Counsel for the city attempts to draw an analogy between the franchise granted to intervening defendant to make use of the city's highways for private purposes and the authority granted by the State of Pennsylvania to the Turnpike Commission to use the right of way of the turnpike for telephone and telegraph lines, gas stations, stores, hotels, restaurants, advertising signs, etc. No such analogy can be drawn. The Turnpike Commission is a public business corporation created by the State for the purpose of constructing and maintaining a turnpike, and in furtherance of its corporate purposes it is vested with the power of purchasing private property or condemning it by eminent domain. Under the legislation creating the commission, owners of private property are entitled to compensation for all property taken or used in the construction or maintenance of the turnpike. In the instant case, the city is attempting to make use of the sidewalks of the public highways for the sole purpose of securing revenue from a corporation engaged in the busines of private advertising, and no compensation is to be paid to the owners of the properties abutting on the sidewalks. No further discussion is required to demonstrate the broad difference between the taking and use of property by the Turnpike Commission by purchase or under the power of eminent domain, and the use or franchise of the sidewalks of the city for purely private purposes, which the city here proposes to confer upon a business corporation for private gain and without compensation to the owners of the sidewalks.

Counsel for defendants also cite in support of the validity of the ordinance under consideration cases

dealing with the maintenance of newsstands on sidewalks of private property, notably, Wilson et al. v. McGill (C. P. No. 7 of Philadelphia County), 42 D. & C. 74. In the cited case, the court held that a newsstand on a commercial property is a *public convenience*, and is a proper *public use* of the sidewalk and does not constitute a public nuisance, and that such use cannot be enjoined, so long as it does not in fact obstruct free passage along the sidewalk and is not excessive in size or otherwise objectionable.

The cases dealing with the right to maintain newsstands on sidewalks are sui generis, and the incidental use of private property for such purpose has been sustained on the ground of public welfare and convenience. There is clearly no analogy between these newsstand cases and the case at bar.

From the foregoing analysis of the cases cited by counsel for defendants, it is abundantly clear that any use (either directly or through the device of the grant of a license or a franchise) of the public highways by the State, or any of its political subdivisions, must be for public purposes. We, therefore, hold that it was a diversion of the public highways of the city to a private use when the City of Philadelphia by ordinance granted a franchise to intervening defendant, permitting it to use the sidewalks of the premises owned by plaintiffs for the purpose of promoting the business of private advertising.

The final argument of counsel for defendants is that if it be conceded, arguendo, that, under ordinary and usual circumstances, the city would have no legal right to make use of or to franchise the use of the sidewalks of the public highways for the sole purpose of promoting the business of private advertising, nevertheless, by reason of the fact that, in the instant case, the proposed advertising signs authorized by the ordinance are to be affixed to parking meter stanchions which are

owned by the city and which are now lawfully located upon the pavements of the public highways (under the police power validly exercised by the city for the purpose of regulating traffic) the city, under these circumstances, has the right to attach the proposed advertising signs to its own parking meter stanchions, because such use is not inconsistent with the primary public purpose for which the parking meter stanchions were installed and does not add any undue burden upon the abutting property owners or the public. This proposition is designated by counsel as "the incidental use" theory; that is, that the city may lawfully make such incidental use *of its own property for private use,* provided that such private use does not limit the use of such property for public purposes. In support of this theory, counsel for defendants cite the cases of Clarey v. City of Philadelphia, 311 Pa. 11, and James Rees & Sons Co. v. City of Pittsburgh, 316 Pa. 356.

In the Clarey case, it was held that the City of Philadelphia had the power to lease its convention hall for the conduct of sporting events, privately conducted for gain or profit, provided that such private use did not interfere with the use of the hall for the public purpose for which it was owned and dedicated.

In the Rees case, it was held that the City of Pittsburgh had the power to permit the use of a public wharf, owned by it, as a public parking space and make a charge for the storing of automobiles therein so long as such use did not interfere with its use for landing and wharf purposes.

Although not cited by counsel for defendants, the case of Bernstein v. City of Pittsburgh, 366 Pa. 200, is analogous to the Clarey and Rees cases. There it was held that the City of Pittsburgh may legally erect an open-air auditorium in a public park and lease it during the summer months to a nonprofit corporation

for the presentation by the latter of light opera for which admission charges will be made.

Counsel for defendants seek to draw an analogy from the "incidental use" principle enunciated in the cited cases to the principle contended for in the instant case. The argument advanced is that ownership by the city of the parking meter stanchions, on which the advertising signs authorized by the ordinance are to be affixed, is equivalent to the ownership by the city in the cited cases of a public convention hall, a public wharf and a public park, and that, therefore, the franchise granted by the city to intervening defendant, under the ordinance authorizing the affixing of advertising signs upon the city's parking meter stanchions, while constituting a franchise for a private and commercial purpose, is an "incidental use" of the *city's own property* and one that does not interfere with the primary use of said property.

The argument is specious. While it is true that the stanchions upon which the advertising signs are proposed to be erected are the property of the city, they are property only in the limited sense that they are necessary and essential small instrumentalities erected on the sidewalks for the purpose of collecting tolls for parking on the streets. These instrumentalities erected under the police power are essentially different from a public convention hall, a public wharf or a public park. A convention hall, a public wharf and a public park are erected upon property owned by the city for public uses and purposes; whereas parking meter stanchions are erected upon the private property of abutting owners, and their maintenance thereon is justified only by the public easement which the city holds in its highways for the purpose of regulating traffic under the police power. Ownership by a municipality of a public convention hall, a public wharf or a public park involves huge expenditures for mainte-

nance, and the courts have held that, in the interest of the taxpayers, a municipality may obtain revenue to support these huge investments by permitting an incidental use thereof for private purposes, provided that such use does not interfere with the public use for which the property was originally dedicated.

Another distinguishing feature between the instant case and the cases in which the "incidental use" theory was applied is that in the latter the rights of the owners of private property were not involved. Here the rights of the owners of private property are directly involved by the private use which defendants seek to make of the city's parking meter stanchions.

It has been firmly established in the law of real property in this State that an easement cannot lawfully be used for a purpose different from that for which it was dedicated: Allen v. Scheib, 257 Pa. 6; Taylor v. Heffner, 359 Pa. 157. Therefore, while abutting owners must submit to parking meter stanchions on their sidewalks by virtue of a valid exercise of the city's police power, the public easement cannot be enlarged and extended to encompass an *additional use which is private in nature* and bears no relation to the public health, safety or welfare. If the city's position is tenable, it could then divert to private and commercial use all forms of apparatus maintained by the city on sidewalks of private property. Thus, the city's fire plugs, fire alarm boxes, police call boxes, and traffic light standards could be utilized by the city for commercial advertising, if the principle for which defendants are here contending is valid.

Counsel for defendants seem to concede that the city would have no right to erect a stanchion upon the sidewalk of an abutting owner of property for the *sole purpose of displaying commercial advertising signs*. It would certainly follow, therefore, that the city cannot do indirectly that which it is prohibited from doing

directly, and it would be an unwarranted extension of the police power of the city to permit it to utilize its parking meter stanchions for the display of commercial advertising. As the Supreme Court said in the Ormsby case, supra, at pages 69-70:

"Private property cannot be taken for private purposes. . . . Where land is dedicated for street purposes . . . the property so taken may not lawfully be applied to another and distinct purpose by the municipality *unless it be a public use* not inconsistent with its use as a highway." (Italics supplied.)

The additional use which the city, by the ordinance under consideration, proposes to make of its parking meter stanchions is wholly private, and such use cannot be justified under the police power.

We, therefore, hold that the ordinance enacted by the City of Philadelphia on October 13, 1952, is ultra vires and void.

In the briefs submitted by counsel for plaintiffs, the city's ordinance was attacked on the ground that it violated the fourteenth amendment to the Constitution of the United States in that: (1) It was an unlawful exercise of the police power and, therefore, a taking of private property without due process of law, and (2) that it was discriminatory, and deprived plaintiffs of the equal protection of the laws.

The briefs submitted by plaintiffs are devoted almost exclusively to an attack on the ordinance on the ground that it was a taking of private property without due process of the law, and only a very brief argument was made in attacking the ordinance on the ground that it denied plaintiffs the equal protection of the laws. While the original complaint attacked the ordinance on both grounds, the amended complaint eliminated the second ground and, consistent with the elimination of this attack on the ordinance, plaintiffs submitted no requests for findings of fact or conclusions of law with

respect to any denial to plaintiffs of the equal protection of the laws by the ordinance under consideration. Therefore, in this adjudication we have not considered the question of whether or not the ordinance denied plaintiffs the equal protection of the laws.

*Conclusions of Law*

1. Plaintiffs, Donald S. Leas, Jr., et ux., John de Palma, James F. Barr, Herbert B. Rothe and Russell L. Medinger, as the owners of premises abutting upon Germantown Avenue, are the owners in fee of the sidewalks thereon, subject only to the public easement therein.

2. Plaintiffs enumerated in conclusion of law no. 1 above are proper parties to this proceeding, in their capacity as owners of premises abutting upon Germantown Avenue and in their capacity as citizens and taxpayers.

3. Plaintiff, George Robertson & Sons, Inc., is a proper party plaintiff in this proceeding, in its capacity as the owner of premises abutting upon Germantown and Highland Avenues, and in its capacity as a taxpayer.

4. The Chestnut Hill and Mt. Airy Business Men's Association is not a proper party plaintiff to this proceeding, for the reasons hereinbefore set forth.

5. The sovereign has the right to take or make use of private property only by the exercise of its power of taxation, its power of eminent domain, or its police power.

6. The sovereign cannot, in the exercise of its police power, take or make use of private property for private or commercial uses and purposes.

7. The sovereign, in the exercise of its police power, cannot divert public property to private or commercial uses and purposes, except that it may make an incidental private use of public property, provided that such use does not interfere with its primary pub-

lic use, and does not take or use the private property of others.

8. The State of Pennsylvania has delegated to the City of Philadelphia its police power to regulate and control the public highways of the City of Philadelphia, as fully and completely as the State itself could exercise such power.

9. The City of Philadelphia, in the exercise of its police power, has the right to regulate and control the sidewalks of Germantown and Highland Avenues for public uses and purposes only.

10. The attachment of advertising signs or devices upon parking meter stanchions, owned by the city and located upon the sidewalks of plaintiffs, would constitute a private and commercial use of these sidewalks.

11. The ordinance of the City of Philadelphia dated October 13, 1952, purporting to authorize the attachment of advertising signs or devices upon the parking meter stanchions owned by the city and located upon the sidewalks of plaintiffs, constitutes a use of private property without due process of law and is, therefore, ultra vires and void.

12. The contract entered into by the City of Philadelphia with the City Meter-Ad Corporation, dated April 14, 1953, in pursuance of the aforesaid ordinance of October 13, 1952, is void and of no effect, insofar as this contract purports to authorize the attachment of advertising signs or devices upon the parking meter stanchions owned by the city and located upon the sidewalks of plaintiffs.

### Decree Nisi

And now, to wit, January 5, 1954, in accordance with the foregoing findings of fact and conclusions of law, it is ordered, adjudged and decreed as follows:

1. Defendant, City of Philadelphia, is enjoined and restrained from carrying into effect the provisions of

the ordinance of October 13, 1952, insofar as that ordinance authorizes the installation or attachment of advertising signs or devices upon parking meter stanchions owned by the City of Philadelphia and erected upon the sidewalks of premises owned by plaintiffs.

2. Defendant, City of Philadelphia, and intervening defendant, City Meter-Ad Corporation, are enjoined and restrained from carrying into effect the provisions of the contract executed by them under date of April 14, 1953, insofar as this contract authorizes the installation or attachment of advertising signs or devices upon parking meter stanchions owned by the City of Philadelphia and erected upon the sidewalks of premises owned by plaintiffs.

3. The costs of these proceedings are imposed upon defendant, City of Philadelphia.

4. The prothonotary is hereby directed to enter this decree and notify counsel for the parties of the filing of this adjudication, informing them that, unless exceptions are filed thereto within 20 days after notice of the filing of this adjudication, this decree shall become final.